IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL STOLARIK,

        Plaintiff,

v.                      3:12-CV-01249
                           (JUDGE MARIANI)

CITY OF WILKES-BARRE, et al.,

        Defendants.

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Dismiss filed by the City of Wilkes-Barre and three of its police officers in this civil rights case. The Court will dismiss the entire Complaint without prejudice to amend and to reallege the various Counts, for the reasons and with the qualifications discussed below.

### II. Factual Allegations

Paul Stolarik filed a Complaint (Doc. 1) before this Court on June 29, 2012. He alleged eleven separate causes of action, some of which are actually multiple claims compounded into one. However, the essence of his Complaint is as follows.

On July 2, 2010, Paul's father, John Stolarik, filed a temporary Protection from Abuse (PFA) order against Paul. (Compl., Doc. 1, at ¶ 15.) Paul was unaware of this, as the order had not been served on him, and so, that same day, he attempted to enter

the residence in Wilkes-Barre where he lived with his father. (*Id.*) John, being "under the mistaken assumption that [the order] which, if properly served, would have precluded and evicted the son . . . from being at" their residence, refused to let Paul in and called the police. (*Id.*)

When the police officers—named defendants Ed Casella and Kenneth Jones—arrived on the scene, Paul informed them "that he was not aware of a PFA was issued [*sic*] and made it clear to responding officers that no PFA was served upon him." (*Id.* at ¶¶ 16-17.) The officers did not independently verify Paul's statements, but rather "immediately seized" and arrested him, and turned him over to the custody of the Wilkes-Barre Police Department. (*Id.* at ¶¶ 18, 20.) At the police department, Stolarik was under the custody of defendant Paul Crawford, who "continued to seize and detain Stolarik . . . despite having no lawful authority to do so and despite continued pleadings by Stolarik that he was not aware of any temporary PFA Order." (*Id.* at ¶ 21.)

While Stolarik was held at the police station, Casella and Jones "proceed[ed] to file [an] Indirect Criminal Contempt of Court Order charge against him." (*Id.* at ¶ 18.) He was arraigned the next day on both the PFA violation and contempt counts. (*Id.* at ¶ 23.) Unable to post bail, he was sent to the Luzerne County Prison. (*Id.*)

It was not until July 8—six days after Stolarik's arrest—that the PFA order was finally served on him. (*Id.* at ¶ 30.) This was the date of the hearing concerning

2

Stolarik's PFA violation, and Stolarik was not served with the order until he arrived at the courthouse to attend the hearing itself. (*Id.*) Accordingly, "[d]ue to lack of prior service," the hearing was continued until July 13. (*Id.* at ¶ 31.) It appears that Stolarik was sent back to jail to await this next hearing. (*See id.* at ¶ 32.) Finally, on July 13, both the PFA and the indirect criminal contempt charges were dismissed by the Luzerne County Court of Common Pleas and Stolarik was ordered to be released. (*Id.*)

As a result of all of the foregoing, Stolarik alleges that he suffered, *inter alia*, physical injury and emotional distress, as well as lost employment. (*Id.* at ¶¶ 39-40.) He therefore filed this Complaint, which names the City of Wilkes-Barre; Officers Casella, Jones, and Crawford; and Police Chief Gerard Dessoye, in his supervisory capacity, as defendants. (*Id.* at ¶¶ 8-12.) On September 14, 2012, the Defendants filed the present Motion to Dismiss (Doc. 4), seeking dismissal on all counts. The Court shall now turn to the merits of that motion.

### III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. <u>Analysis</u>

### 1. Count I: "Fourth Amendment Right to be Free from Unreasonable Seizures and Fourteenth Amendment Right to be Free from Deprivation of Liberty," under 42 U.S.C. § 1983, against City of Wilkes-Barre and Officers Casella, Jones, and Crawford

#### i. Fourteenth Amendment Claim

At the outset, the cause of action labeled "Count I" appears to be in fact two causes of action: one for violation of Stolarik's Fourth Amendment rights and one for the violation of his due process rights under the Fourteenth Amendment. (*See also* Compl. at ¶ 49 (alleging that defendants deprived Stolarik of his Fourteenth Amendment due process rights "[i]n addition" to his Fourth Amendment rights).)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the

5

alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988). Though the issue is not raised in this section of Defendants' Brief, the United States Supreme Court has also held that violations of substantive due process rights under the Fourteenth Amendment do not give rise to a cause of action under 42 U.S.C. § 1983 when "a particular Amendment provides an explicit textual source of constitutional protection against [the] particular sort of government behavior." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994) (internal quotation marks omitted); *see also Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998) ("[W]e note that *Albright* commands that [section 1983] claims governed by explicit constitutional text may not be grounded in substantive due process.").

Here, Stolarik's cause of action plainly falls under the Fourth Amendment, so a substantive due process claim cannot stand. *Cf. Albright*, 510 U.S. at 275 (concluding that, whereas petitioner's Fourth Amendment claim could succeed if properly briefed, "substantive due process, with its scarce and open-ended guideposts, can afford him no relief") (internal citations and quotation marks omitted). Accordingly, the Court will dismiss any independent claim under the Fourteenth Amendment. Because leave to amend would be futile, given that such a claim is barred by binding precedent, the Court

will dismiss with prejudice.[1] Plaintiff's claim is, however, properly brought under the Fourth Amendment, and is analyzed below.

### ii. Probable Cause

Next, Defendants argue that Count I must be dismissed because the officers had probable cause to arrest Stolarik. (Defs.' Brief in Supp. of Mot. to Dismiss, Doc. 12, at 11.) They argue that, because there was a valid PFA order issued against Stolarik, and because it reasonably appeared that Stolarik was in violation of that order, then the objective indicia of probable cause were in place at the time of arrest to justify that arrest. (*See id.* at 9-10.)

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). They turn on "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537

---

[1] The Court's holding is premised on its interpretation of the Complaint as alleging two separate cause of action. It does not believe that the Complaint, as written, is susceptible to the interpretation of alleging the Fourteenth Amendment merely as the vehicle for enforcing the Fourth Amendment against a state entity. This latter would be a valid use of the incorporation doctrine, as the Fourth Amendment right against unreasonable seizures has long been incorporated against the states via the Fourteenth Amendment. *See, e.g., Wolf v. Colorado*, 338 U.S. 25, 27-28, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782 (1949). However, because the complaint as written states the two claims using different terminology (alleging the "right to be free from unreasonable seizure" *and* the "right to be free from deprivation of liberty"), the Court must conclude that a rote invocation of the incorporation doctrine was not Plaintiff's intent. It dismisses on the strength of that conclusion. This dismissal should not be interpreted as precluding the Plaintiff from realleging the Fourteenth Amendment consistent with the incorporation doctrine.

(2004). In reaching this conclusion, the arresting officer's state of mind is irrelevant; all the factfinder must ask is whether the facts available to the arresting officer objectively gave rise to a finding of probable cause at the time the arrest was made. *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) (summarizing case law and concluding that "[s]ubjective intention plays no role in ordinary, probable-cause Fourth Amendment analysis").

Ordinarily, questions of probable cause in 1983 actions are questions of fact, best resolved by a jury. *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998) (citing *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978)). However, "[t]he question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).[2] For the following reasons, the Court holds that this consideration does not apply to the Complaint as written, and that a dismissal based on probable cause is appropriate.

Here, Stolarik bases his argument for lack of probable cause on the allegations that the police officers (1) did not verify whether the PFA order was ever served on him, (Compl. at ¶¶ 18-19), and (2) ignored his repeated protests that no PFA order had ever

---

[2] *Sharrar* involved a motion for summary judgment, but the same analysis logically applies to a motion to dismiss. *Cf. Ethypharm*, 707 F.3d at 231 n.14 (noting that, at the motion to dismiss stage, the Court will only accept "*reasonable* inferences" from the factual allegations as true, and that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (emphasis added).

8

been served on him, (*id.* at ¶¶ 17, 21). (*See also* Pl.'s Brief in Opp. to Mot. to Dismiss, Doc. 18, at 11-13.)

However, even if the Court accepts these facts as true, it is hard to see how they could negate probable cause. On the face of Stolarik's Complaint, it appears that the officers were confronted with a facially valid PFA order—along with John Stolarik's testimony that he had filed that order—and that the only evidence contradicting the validity of the order were Paul Stolarik's protestations to the contrary. Stolarik might have turned out to be correct, but at the time of the arrest it was reasonable for an officer confronted with these facts to discount Stolarik's statements as self-serving. Moreover, the Court is aware of no case law requiring an officer to verify whether a PFA order has been served on its subject. Indeed, under the Pennsylvania Protection from Abuse Act, while the state police are required to maintain a registry of all PFA orders to be available to law enforcement officers, *see* 23 Pa. C.S.A. § 6105(e)(3), and while that registry is required to list the dates on which the order was entered and expires, *see id.* § 6105(e)(iv)-(v), the registry is not required to list whether the order was ever served on the defendant. So it is not clear that the officers could even have verified that the order had not been served, if they were to attempt to do so.

Accordingly, the Court finds that it must dismiss Count I, against all defendants, because, even viewing the evidence in the light most favorable to the Plaintiff, Plaintiff

9

has given no reason to believe that his arrest was objectively unreasonable. The Court will, however, allow Plaintiff leave to amend so that Plaintiff can lay out specific facts, beyond those currently alleged, that could cast some doubt on a finding of probable cause.[3]

### iii. Officer Crawford's Liability

Plaintiff also alleges Count I against Officer Crawford, the booking officer at the jail who detained him.[4] Even though Crawford's participation in the events that gave rise to this lawsuit is somewhat attenuated, the Court is not prepared to dismiss him from this case entirely. A police officer may be subject to liability under section 1983 for unreasonably failing to intervene to prevent another officer from violating someone's

---

[3] Defendants also seek dismissal on the grounds that they were protected by qualified immunity. (See Doc. 12 at 15-16.) However, "[a]s in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 1714 n.5, 140 L. Ed. 2d 1043 (1998). The preferred approach to resolving such cases
> in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.

Id. "Determining whether plaintiff has alleged a violation of a statutory or constitutional right is, therefore, the threshold issue, and the Supreme Court has clearly instructed that we must not 'assum[e], without deciding, this preliminary issue.'" Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) (quoting Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 114 L. Ed. 2d 277 (1991)). Because Stolarik has not given the Court any reason to believe that arresting him without checking whether a valid PFA order had been served on him violated constitutional guarantees, and because the Court has offered him a second opportunity to make such a showing, a ruling on qualified immunity is premature. Accordingly, the Court will defer ruling on the issue until such a time as Plaintiff amends his allegations to properly allege a violation of his constitutional rights. At such time, the Court will proceed through the various steps to decide if qualified immunity applies.

[4] He also alleges Counts III and X against Crawford. But, because in order for Crawford to be liable under either of these counts, the factfinder would need to find that the arresting officers lacked probable cause, the same analysis applies there as it does for Count I.

10

constitutional rights. See Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). In the context of an excessive force claim, the Third Circuit stated:

> The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force.

Id. at 651. The same reasoning applies in a case of wrongful arrest; if Crawford did indeed passively acquiesce in the violation of Stolarik's rights, then he could be liable under 1983.

However, it is not clear at this point that a constitutional violation actually occurred. If there was probable cause to arrest Stolarik, then, of course, Crawford could not be liable, because he only would have been a bystander to legal activity. On the other hand, if there was no probable cause to arrest, then Crawford could be liable if he knew about the violation and if he had a "realistic and reasonable opportunity to intervene." Id.

Therefore, the Court will dismiss all the claims against Crawford without prejudice, because Stolarik has not pled facts to indicate a lack of probable cause. Consistent with its holding with respect to the other officers, the Court will allow Stolarik leave to amend his allegations against Crawford.

### 2. Counts II, IV, and V

Stolarik also brings the following claims:[5]

1. A *Monell* claim for failure to supervise and discipline the city's police officers, under section 1983, against the City of Wilkes-Barre and Chief Dessoye (Count II), (*see* Compl. at ¶¶ 53-58);
2. A *Monell* claim for failure to train the city's police officers, under the same section and against the same defendants as Count II, above (Count IV), (*see id.* at ¶¶ 62-71); and
3. A claim for malicious prosecution, under section 1983, against the City of Wilkes-Barre and Officers Casella and Jones (Count V), (*see id.* at ¶¶ 72-83).

However, each of these claims is premised on the allegation that the police lacked probable cause to arrest him. (*See, e.g., id.* at ¶ 57 (Count II) ("As a result of the City of Wilkes-Barre's policies and customs [in tolerating and not punishing officers for making illegal seizures], Paul S. Stolarik suffered damages described herein."); *id.* at ¶ 66 (Count IV) ("As a result of these policies and/or customs [i.e., failure to train], the defendants Casella, Jones, and Crawford were able to and did seize the Plaintiff without probable cause . . . ."); *id.* at ¶¶ 74, 77 (Count V) ("The defendants Casellas [*sic*] and Jones, without probable cause, arrested Stolarik for a PFA violation despite the fact that they knew from communications with Stolarik at the scene that no PFA was ever served upon Stolarik. . . . The defendants Casellas [*sic*] and Jones initiated a quasi-criminal proceeding against Stolarik [following and related to the arrest]."). But because the

---

[5] Stolarik originally alleged Counts II and IV under 42 U.S.C. § 1985 as well as 1983, but, in a subsequent filing, he voluntarily withdrew those claims. (See Doc. 18 at 5.)

Court has already concluded that Stolarik's assertions at the scene of arrest and the police officers' failure to verify whether the PFA had been properly served do not negate probable cause, then these claims must also fail, as against all defendants. Obviously, the supervisors cannot be liable for the actions of their subordinates if their subordinates acted legally. Likewise, no one can be liable for malicious prosecution if the arrest and subsequent initiation of prosecution were valid exercises of police power.

Therefore, Stolarik must plead sufficient facts to show that the police acted in the absence of probable cause before he can proceed on these claims. If he pleads such facts, then these claims can go forward as a properly pled cause of action. Until then, they must be dismissed with leave to amend, for the same reasons as Count I.

### 3. Count III: "Fourteenth Amendment Violation Right to be Free from Arbitrary State Action," under 42 U.S.C. § 1983, against City of Wilkes-Barre and Officers Casella, Jones, and Crawford

Stolarik's third Count is short and unclear. After realleging all previous allegations, Stolarik adds only:

> 60. As a result of Defendants actions described herein above, Plaintiff's 14th amendment right to be free from arbitrary state action has been violated.
> 61. As a result of defendant's violations of the Plaintiff's Constitutional rights, the Plaintiff suffered substantial damages.

(*Id.* at ¶¶ 60-61.)

The Court does not know exactly what Stolarik means by his "14th amendment right to be free from arbitrary state action," especially because, as discussed above, violations of substantive due process rights are not cognizable under Section 1983 when the basis for the claim is one of the enumerated rights. (*See also* Doc. 18 at 7 n.2 (agreeing that substantive due process claims are precluded under *Albright v. Oliver*).)

In Plaintiff's Brief in Opposition to the Motion to Dismiss, he clarifies that "Count III of the Plaintiff's complaint contains a Procedural Due Process claim." (*Id.* at 7.) But, even assuming that a procedural due process claim could in fact go forward under the facts alleged, Plaintiff's Complaint simply does not spell out such a claim. If Stolarik wants to allege that his procedural due process rights were violated, then his Complaint should say so, and should lay out with specificity how such violation occurred.

Because Count III has generated so much confusion, (*see, e.g.*, Doc. 12 at 7 (stating that "Defendants are unclear as to what Plaintiff means by the phrase 'arbitrary state action,'" and assuming—as it turns out incorrectly—that Plaintiff intended a claim under the Equal Protection Clause), the Court will dismiss it with leave to amend. In an amended complaint, Stolarik should make clear, in precise language, just what he is alleging and what the factual basis for alleging it is.

## 4. Counts VI-XI: State Tort Claims

The remainder of Plaintiff's Complaint contains a series of pendent common-law tort claims. Plaintiff alleges Assault (Count VI), Battery (Count VII), False Arrest (Count IX), False Imprisonment (Count X), and Malicious Prosecution (Count XI). Plaintiff had alleged Intentional Infliction of Emotional Distress as Count VIII, but has since voluntarily withdrawn that claim. (*See* Doc. 18 at 23.) He also withdrew the original "abuse of process" portion of Count XI. (*Id.* at 29.) All of the remaining claims rely on the same facts recited previously in this Opinion.

However, Pennsylvania law provides immunity from civil damages for government employees acting within the scope of their official duties. *See* 42 Pa. C.S.A. §§ 8541 (governmental agency immunity), § 8545 (governmental employee immunity). While this immunity is subject to certain exceptions, *see id.* §§ 8542, 8550, it is not clear on the face of the Complaint that any of these exceptions apply. Stolarik relies on the "willful misconduct" exception in section 8550. (Doc. 18 at 21-22.) But to establish that the officers exhibited "willful misconduct," the Court would first have to conclude that they lacked probable cause for the arrest, and, as stated above, the Court cannot agree with Stolarik that, even taking all of his allegations as true, he has thus far alleged a plausible case that the Defendants lacked probable cause for the arrest. Thus, in order to

15

proceed with the common-law tort claims, Stolarik must establish that the officers lacked probable cause for his arrest and detention.

Until he does so, the tort claims must all be dismissed without prejudice for two reasons. First, if the allegations do not indicate a lack of probable cause, then the willful misconduct exception to governmental immunity will not apply. Second, the Court has already dismissed all the federal claims based on the probable cause issue. So even if it were arguable that some other exception to immunity applies, the Court could no longer exercise jurisdiction over the case because it would only consist of once-pendent state claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 Fed. App'x 163, 166 (3d Cir. 2006) (summarizing Third Circuit case law on pendent jurisdiction). Such dismissal, however, is without prejudice to reallege these claims if Stolarik provides sufficient allegations to indicate that the officers lacked probable cause for the arrest.

This approach is specifically authorized by 28 U.S.C § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under [the subsection authorizing supplemental jurisdiction] if— . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

16

5. **Punitive Damages**

Finally, Defendants argue that Plaintiff is not entitled to punitive damages. (Doc. 12 at 29-30.) It is not clear if Defendants intend this as an independent ground for dismissal, as the issue is not raised in their Motion. (*See generally* Doc. 4.) But, because the Court has dismissed all of Plaintiff's claims on the grounds that there was no apparent lack of probable cause, then the punitive damages issue is moot at this time. If Plaintiff submits an amended complaint that alleges specific facts indicating that the officers lacked probable cause, he would be free to reaver his claim punitive damages.

V. <u>Conclusion</u>

Accordingly, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED** and Plaintiff's Complaint (Doc. 1) is **DISMISSED** without prejudice to amend and reallege the various Counts, for the reasons and with the qualifications discussed above. A separate Order follows.

Robert D. Mariani
United States District Judge